NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| FRANK PAUZA, | : | |
| Plaintiff, | : | Civil Action No. 06-2608 (JAG) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| THE STANDARD GROUP, INC., and STEVEN LEVKOFF Individually, | : : : | |
| Defendants. | : | |

**GREENAWAY, JR., U.S.D.J.**

Plaintiff Frank Pauza filed the instant action on April 7, 2006, in the Superior Court of New Jersey, Law Division: Essex County. On June 9, 2006, Defendants The Standard Group, Inc. ("Standard") and Steven Levkoff ("Levkoff") (collectively, "Defendants"), invoking this Court's diversity jurisdiction, under 28 U.S.C. § 1332, removed this action to this Court. Plaintiff's Complaint asserts causes of action for: (1) breach of contract; (2) breach of the duty of good faith and fair dealing; (3) conversion; (4) unjust enrichment; and (5) violation of New York Labor Law. This matter comes before this Court on the motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted, pursuant to FED. R. CIV. P. 12(b)(6), by Defendants. For the reasons set forth below, this motion will be denied.

**I.   FACTUAL BACKGROUND**

Standard is a company incorporated in the State of New York, with its principal offices located in Jackson Heights, New York. (Compl., ¶ 3.) Levkoff is the President of Standard.

1

(Id., ¶ 4.)

Plaintiff alleges that on or about January 27, 2005, Defendants offered, and Plaintiff accepted, an employment contract with Standard for a term of two years. (Id., First Count, ¶ 1.) Plaintiff was hired in the capacity of Vice President of Sales / Supply Chain Management. (Id.) On January 27, 2005, Defendants sent Plaintiff an email confirming the essential terms of the parties' purported employment contract. (Id.; Compl., Exh. A.) The email, which is attached to Plaintiff's Complaint as an exhibit, reads as follows:

> The following letter confirms our discussions and outlines the terms of your employment by the Standard Group.
>
> Your starting date shall be approximately 3/1/05, and you shall have the title of Vice President of Sales / Supply Chain Management. Your duties shall include maintaining and growing your existing sales base for Standard; as well as special operational and purchasing projects we identify (both in Jackson Heights and Louisville) after the Universal Folding Box transition is complete.
>
> Through 4/30/05 you shall receive the equivalent of a pro-rated $190 thousand annual salary, to be paid in equal monthly installments, in accordance with the Company's normal payroll practices. From 5/1/05 through 12/31/05, your salary base will drop to $125 thousand, and you shall earn a 2% commission on all sales (to be payable on fully collected receivables). During 12/1/06 through 12/31/06, your annual salary will be $165 thousand, with an earned commission rate of 1% on sales.
>
> There will be a car allowance of $740/month, plus gas. In addition to your choice of the offered base medical plan, we will provide you with an additional $2,500 of uncovered medical expenses, if necessary. Health coverage will commence with the start of your employment by Standard. You will also be entitled to four weeks of vacation, and the availability of the company's 401(k) plan.
>
> We hope the above correctly summarizes our mutual understanding of the terms of your employment . . .

(Compl., Exh. A.)

2

Plaintiff allegedly began his employment in the area of Sales and Supply Chain Management under the terms of his purported employment contract with Standard. (Id., ¶ 4.) From approximately January 27, 2005, through the date on which Defendants terminated his employment, Plaintiff alleges that he performed his duties and job function as Vice President of Sales / Supply Chain Management. (Id.)

Defendants ultimately terminated Plaintiff's employment prior to February 2006. (Id., ¶ 6.) On February 1, 2006, Plaintiff, through counsel, allegedly sent Defendants a demand letter, requesting that Defendants pay severance compensation to Plaintiff for the period through December 31, 2006. (Id, ¶¶ 8-9.) To date, Defendants have allegedly failed to provide the relief requested by Plaintiff. (Id., ¶ 10.)

## II. DISCUSSION

### A.  Legal Standard Governing Motions To Dismiss Under Rule 12(b)(6)

On a motion to dismiss for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6), the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 (3d Cir. 1994). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. See In re Warfarin Sodium, 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. See Morse v. Lower Merion School District, 132 F.3d 902, 906 n.8 (3d Cir. 1997). All reasonable inferences, however, must be drawn in the plaintiff's favor. See Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987). Moreover, the claimant must set forth sufficient information to outline the elements of his or her claims or to permit inferences to be drawn that the elements exist. See FED. R. CIV. P. 8(a)(2); Conley, 355 U.S. at 45-46. "The defendant bears the burden of showing that no claim has been presented." Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

This Court's review of a motion to dismiss for failure to state a claim is limited to the contents of the complaint, including any attached exhibits. See Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992); Caine v. Hardy, 943 F.2d 1406, 1411 n. 5 (5th Cir. 1991).

**B.     Whether Plaintiff's Complaint States A Claim Upon Which Relief May Be Granted**

Defendants argue that Plaintiff's Complaint should be dismissed because no binding contract exists between the parties. Defendants further argue that even if this Court finds that a binding employment contract exists, Plaintiff's claims fail because the contract does not explicitly provide that Plaintiff is entitled to severance pay upon his premature termination. Plaintiff counters that the January 27, 2005 email represents a valid employment contract specifying the duration of Plaintiff's employment. Plaintiff also argues that dismissal is not warranted because the employment contract need not explicitly include the term "severance" to

4

mandate a payout upon premature termination. He also emphasizes that through his Complaint, he seeks other remedies, in addition to severance pay based on his breach of contract claim.

### 1.    *Whether A Binding Employment Contract Existed Between The Parties*

Under New York law,[1] "[a]bsent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party." TSR Consulting Services, Inc v. Steinhouse, 699 N.Y.S.2d 375, 376 (1st Dept. 1999) (citing Rooney v. Tyson, 91 N.Y.2d 685, 689 (1998) (quoting Matter of De Petris v. Union Settlement Assn., 86 N.Y.2d 406, 410 (1995))). "It is only where a plaintiff can establish the existence of an express written agreement limiting the employer's right of termination, that the principles governing employment at will are inapplicable." Feeney v. Marine Midland Banks, Inc., 579 N.Y.S.2d 670, 672 (1st Dept. 1992). "A hiring at so much a day, week, month or year, no time being specified, is an indefinite hiring, and no presumption attaches that it was for a day even, but only at the rate fixed for whatever time the party may serve." TSR, 699 N.Y.S.2d at 376 (quoting Martin v. New York Life Ins. Co., 148 N.Y. 117, 121 (1895)).

Here, the question is whether the agreement at issue merely measured Plaintiff's salary with reference to a yearly rate, thereby creating nothing more than an employment at will that was freely terminable, see Martin, 148 N.Y. at 121, or whether the agreement established a

---

[1] Both parties concede that the employment relationship between Defendants and Plaintiff is governed by New York law. It appears from the allegations in the Complaint that Plaintiff was employed by Defendants to perform work in New York with a New York company. (Compl, ¶¶ 2-3.) See Pancza v. Remco Baby, Inc., 761 F. Supp. 1164, 1168 (D.N.J. 1991) (New York law, rather than New Jersey law, governed breach of contract issues in action arising out of termination of employment where New Jersey's only contact was employee's residence in that state, while employment contract was formed in New York, contract was to be performed in New York, alleged breach occurred in New York, and employer was incorporated in and conducted business from New York).

contract for a fixed period of time, in which case the agreement could be terminated only upon a showing of just cause, see Gressing v. Musical Instrument Sales Co., 222 N.Y. 215, 221 (1918).

In TSR, the New York Supreme Court's First Department found that a question of fact remained as to whether the agreement at issue there could be viewed as creating a contract of employment for a term of two years. The agreement at issue there provided that "you [Steinhouse] will receive a guaranteed recoverable draw of $10,000 for [the first year of employment]" and "[f]or the second year of your employment you will receive a guaranteed recoverable draw of $120,000 against commissions." TSR, 699 N.Y.S.2d at 377. It further spoke of the "first twelve months" of employment, which extends "through May 31, 1998." Id. The TSR court found that these formulations "are certainly consistent with a hiring for a definite period as opposed to an employment at-will." Id. The court also noted, however, that "we cannot say that the agreement is so clear as to render this interpretation the only one possible." Id.

The agreement at issue in this case contains language, which parallels that in the agreement at issue in TSR. The agreement, as stated in the January 27, 2005 email states,

> Your [Plaintiff's] starting date shall be approximately 3/1/05 . . . Through 4/30/05 you shall receive the equivalent of a pro-rated $190 thousand annual salary, to be paid in equal monthly installments, in accordance with the Company's normal payroll practices. From 5/1/05 through 12/31/05, your salary base will drop to $125 thousand, and you shall earn a 2% commission on all sales (to be payable on fully collected receivables). During 12/1/06 through 12/31/06, your annual salary will be $165 thousand, with an earned commission rate of 1% on sales.

(Compl., Exh. A.) By setting forth Plaintiff's agreed-upon compensation in detail through December 31, 2006, the agreement is "certainly consistent with a hiring for a definite period as opposed to an employment at-will." See TSR, 699 N.Y.S.2d at 377. It is thus a question of fact

whether the agreement is in fact an employment contract for a term of years.[2] If the fact-finder in this case ultimately determines that the agreement is a contract for a specified duration of employment, Plaintiff could get the relief he seeks. Thus, to the extent Defendants contend that the absence of an employment contract warrants dismissal of Plaintiff's Complaint, pursuant to Rule 12(b)(6), Defendants' motion is denied.

### 2. *Whether Plaintiff Is Entitled To Severance Benefits Based On Defendants' Purported Breach Of The Agreement*

In addition to arguing that there is no employment contract, Defendants contend that Plaintiff is unable to recover "severance" if he prevails on his claims because, to the extent an employment contract exists, it does not provide for severance in the event of premature termination. This Court finds that this argument does not warrant dismissal of Plaintiff's Complaint.

Under his various causes of action, Plaintiff seeks relief in the form of: (1) compensatory damages; (2) punitive damages; (3) liquidated damages; (4) interest; (5) costs of suit; (6) attorneys' fees; and (6) such other relief as the Court may deem just and proper. (Compl. at 3-6.) While Plaintiff calls the relief he seeks "severance," in fact, according to the Complaint, Plaintiff seeks only those damages listed in his prayers for relief under each cause of action asserted.

---

[2] As the TSR court noted, "[a]lthough contract interpretation is often a sui generis inquiry, various courts, examining contractual language similar to that used in the instant case, have concluded either that the employment agreement created a contract for a fixed term as a matter of law, or at a minimum that a question of fact existed regarding the interpretation of a particular contract." TSR, 699 N.Y.S.2d at 377. See, e.g., Gressing v. Musical Instrument Sales Company, 222 N.Y. 215, 216-221 (1918); Cuppy v. Stollwerck Brothers, Inc., 216 N.Y. 591, 595-96 (1916); Atkins & O'Brien v. ISS Intl. Serv. Sys., 678 N.Y.S.2d 596, 597 (1st Dept. 1998); Levey v. A. Leventhal & Sons, Inc., 647 N.Y.S.2d 597, 598 (4th Dept. 1997); Myers v. Coradian Corp., 459 N.Y.S.2d 929, 930 (1983).

"Severance" is not prayed for.  Defendants do not argue, and this Court cannot find, that Plaintiff cannot achieve the above-listed relief if he is successful in proving up his claims.  Thus, to the extent Defendants move to dismiss Plaintiff's Complaint on the ground that the employment contract does not provide for severance, Defendants' motion is denied.

### III.  CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is denied.

Dated: November 17, 2006                 s/ Joseph A. Greenaway, Jr.
                  JOSEPH A. GREENAWAY, JR., U.S.D.J.