<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| FRANK PAUZA, | : | |
| Plaintiff, | : | Civil Action No. 06-2608 (JAG) |
| | : | |
| ·v | : | **OPINION** |
| | : | |
| THE STANDARD GROUP, INC., and | : | |
| STEVEN LEVKOFF, Individually, | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |

<u>**GREENAWAY, JR., U.S.D.J.**</u>

This matter comes before this Court on the motion by defendants The Standard Group,

Inc. ("Standard") and Steven Levkoff (collectively "Defendants") seeking the grant of summary

judgment, pursuant to FED. R. CIV. P. 56(c), against Plaintiff, Frank Pauza.  For the reasons set

forth below, this motion shall be granted.

<u>**I. BACKGROUND**</u>

In January 2005 Standard purchased the assets of Universal Folding Box Co., Inc.

("Universal") (Def. R. 56.1 Statement at ¶ 1.)  Plaintiff was an employee of Universal at the time

of Defendant's purchase.  (<u>Id.</u> at ¶ 2.)  Plaintiff had a two-year employment contract with

Universal from May 1, 2002 through April 30, 2004, which had been extended for one year to

April 30, 2005. (<u>Id.</u> at ¶ 3.)  Plaintiff earned an annual salary of $190,000, under the contract.

(<u>Id.</u>)  Plaintiff's employment contract with Universal entitled him to payment, pursuant to his

1

contract, through his termination date in the event that Universal terminated him "without

cause." (Id. at ¶ 4.)  This contract was a successor to a prior written three-year agreement.  (Id. at

¶ 5.)  Both of these agreements provided for payment of the balance of the agreement in the event

of termination without cause, which according to Plaintiff, was one of the contract terms that was

most important to him.  (Id. at ¶ 6.)

        In early January 2005, Plaintiff met with Levkoff, the President of Standard, and Lou

Cortes, the Vice President of Standard, about employment at Standard.  (Id. at ¶ 7.)  In order to

give Plaintiff status with former Universal customers that Standard hoped that he would bring

along to Standard, Defendant created the title, Vice President of Sales/Supply Chain

Management for Plaintiff.  (Id. at ¶ 8.)

        On January 27, 2005, Levkoff sent an e-mail to Plaintiff confirming certain terms of his

employment as the Vice President of Sales/Supply Chain Management.  (Id. at ¶ 9.)[1]  In the e-

---

[1] The text of the January 27, 2005 e-mail between Steven Levkoff and Frank Pauza is as
follows:
        Dear Frank,
        The following letter confirms our discussions and outlines the terms of your employment
by the Standard Group.
        Your starting date will be approximately 3/1/05, and you shall have the title of Vice
President of Sales/Supply Chain Management.  Your duties shall include maintaining and
growing your existing sales base for Standard; as well as special operational and purchasing
projects we identify (both in Jackson Heights and Louisville) after the Universal Folding Box
transition is complete.
        Through 4/30/2005 you shall receive the equivalent of a pro-rated $190 thousand annual
salary, to be paid in equal monthly installments, in accordance with the Company's normal
payroll practices.  From 5/1/05 through 12/31/05, your salary base will drop to $125 thousand,
and you shall earn a 2% commission on all sales (to be payable on fully collected receivables).
During 12/1/06 through 12/31/06, your annual salary will be $165 thousand, with an earned
commission rate of 1% on sales.
        There will be a car allowance of $740/month, plus gas.  In addition to your choice of
offered base medical plan, we will provide you with an additional $2500 of uncovered medical
expenses, if necessary.  Health coverage will commence with the start of your employment by

mail, Defendant agreed to pay Plaintiff a pro-rated salary of $190,000 through April 30, 2005. (Id. at ¶ 10.)  Also mentioned is Plaintiff's compensation rate, which in addition to the pro-rated salary through April 30, 2005, included an annual salary of $165, 000. (Id. at ¶ 11.)  Aside from the January 27, 2005 e-mail, no other documentation sets forth the terms and conditions of Plaintiff's employment with Standard. (Id. at ¶ 13.)  The term severance does not appear in the January 27, 2005 e-mail.  (Id. at ¶ 14.)  Plaintiff agreed to become an employee of Standard. (Id. at ¶ 19.)

At the beginning of Plaintiff's employment with Standard, Plaintiff signed an acknowledgment that he received Standard's Personnel Policies handbook.  (Id.)  On August 15, 2005, Plaintiff signed an acknowledgment that he received Standard's updated Personnel Policies handbook.  (Id. at ¶ 19.)  Both handbooks describe Standard employees as being "at will" employees.  Plaintiff understood the meaning of "employment at will." (Id. at ¶ 21.)

On January 11, 2006, Standard terminated Plaintiff's employment.  (Id. at ¶ 24.)  On January 23, 2006, Plaintiff began employment with Unimac Graphics ("Unimac"), earning an annual salary of $200,000.  (Id. at ¶ 25.)  For the year 2006, Plaintiff earned a total of $191,000 from Unimac Graphics and $21,766 from Standard.  (Id. at ¶ 26.)

Plaintiff claims that he had numerous conversations with Levkoff, wherein the terms of an employment agreement were discussed.  (Plaintiff's R. 56.1 Statement, Response to

---

footnote cont'd.

Standard. You will also be entitled to four weeks vacation, and the availability of the company's 401k plan.

We hope the above correctly summarizes our mutual understanding of the terms of your employment...

Steve  (Cert. of Bertrand B. Pogrebin, Esq., Ex. B)

3

Defendants' Statement of Material Facts, at ¶ 13.)  Plaintiff contends that the January 27, 2005 e-mail summarized portions of the agreement between Standard and Plaintiff, but did not set forth every detail of the agreement, including severance.  (Id. at ¶ 12.)  Plaintiff states that he believed that the January 27, 2005 e-mail and the oral agreement between he and Levkoff constituted his employment contract with Standard.  (Id. at ¶ 16.)

Plaintiff admits that he received Standard's Personnel Policies Handbook, but points out that it states "Employees who do not have a separate, individual written contract are employed at will of the company are subject to termination at anytime for any reason with or without notice." (Id. at ¶¶ 20-21.)  Plaintiff stated he never read the handbooks.  (Id. at ¶ 23.)

Plaintiff's understanding of his employment agreement with Standard, as "confirmed" in the January 27, 2005 e-mail was that he had a guaranteed two-year term of employment. (Plaintiff's R. 56.1 Statement, Counterstatement of Material Facts, at ¶ 17.)  Plaintiff's further understanding of the agreement he reached with Levkoff was that if he was terminated by Standard prior to the expiration of the two-year period of time, he would be paid the remainder of his contract. (Id. at ¶ 18.)  Plaintiff states that he had no understanding that he would be required to pay the money back if he got a new job prior to the expiration of the two-year period, and he certainly would not have agreed to such a term. (Id. at ¶ 19.)

Plaintiff stated that he did not read the handbook, and did not review any provision in the handbook regarding at-will employees and signed the handbook acknowledgment because he was asked to sign it and wanted to be cooperative. (Id. at ¶ 28.)  Plaintiff notes that another Standard employee, who received a three-year employment contract, with severance if he was terminated without cause, also signed an acknowledgment that he received Standard's Personnel Policies

handbook.  (Id. at ¶¶ 21, 29.)  Plaintiff states that no one at Standard ever, in any way, discussed or advised him that he was an at-will employee.  (Id. at ¶ 30.)

Plaintiff filed the Complaint in the instant action on April 6, 2006 in the Morris Country Superior Court.  Plaintiff alleges five causes of action.  Count I alleges breach of contract based on Standard's and Levkoff's failure to provide plaintiff with severance pay.  Count II alleges breach of the duty of good faith and fair dealing contained in the January 27, 2005 e-mail.  Count III alleges conversion of Plaintiff's severance benefits.  Count IV alleges unjust enrichment based on Standard's and Levkoff's retention of Plaintiff's severance benefits.  Count V alleges violation of the New York Labor Law based on Standard's and Levkoff's failure to pay Plaintiff the severance pay allegedly owed to him.

Defendants removed Pauza's Complaint to this Court based on diversity jurisdiction.[2] The amount in controversy exceeds $75,000.00.  Defendants moved to dismiss the Complaint in June 2006.  This Court by Opinion and Order dated November 17, 2006 denied Defendants' motion.  Following discovery, Defendants filed the instant motion.

## II. STANDARD OF REVIEW

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Cascara v. Pomeroy, 313 F.3d 828, 832-33 (3d Cir. 2002).  A factual dispute

---

[2] Plaintiff is an individual and a resident of the State of New Jersey.  Standard is a corporation incorporated and existing under the laws of the State of New York, with its principal place of business located at 85th and 24th Avenue, Jackson Heights, New York.  Levkoff is an individual and a resident of the State of New York. (Def. Notice of Removal at ¶ 4.)

is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). This Court shall "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007) (citation omitted). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence . . . ." Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

When the moving party has the burden of proof on an issue at trial, that party has "the burden of supporting their motions 'with credible evidence . . . that would entitle [them] to a directed verdict if not controverted at trial.'" In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (quoting Celotex, 477 U.S. at 331); see also United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) ("When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it . . . must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." (emphasis in original) (internal citations omitted).) Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and

6

pleadings are insufficient to repel summary judgment." <u>Schoch v. First Fid. Bancorporation</u>, 912 F.2d 654, 657 (3d Cir. 1990); <u>see also</u> FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").  "If the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." <u>Foster v. Morris</u>, 208 F. App'x 174, 179 (3d Cir. 2006).

## III.  ANALYSIS

### A.  Plaintiff's Breach of Contract Claim

Plaintiff alleges in Count I of the Complaint that he entered into a two year employment contract with Defendants which requires Standard to pay him severance through December 31, 2006, if he is terminated without cause.  (Complaint at ¶ 8.)  On February 1, 2006, Plaintiff, through counsel, sent Defendants a demand letter, in which he requested that he receive the severance pay allegedly owed to him.  (<u>Id.</u> at ¶ 9.)

"Under New York Law, "[a]bsent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party" (<u>Rooney v. Tyson</u>, 91 N.Y.2d 685, 689, 674 N.Y.S.2d 616, 697 N.E.2d 571, quoting <u>Matter of De Petris v. Union Settlement Assn.</u>, 86 N.Y.2d 406, 633 N.Y.S.2d 274, 657 N.E.2d 269). "A hiring at so much a day, week, month or year, no time being specified, is an indefinite hiring, and no presumption attaches that it was for a day even, but only at the rate fixed for whatever time the party may serve" (<u>Martin v. New York Life Ins. Co.</u>, 148 N.Y. 117, 121, 42 N.E. 416). Accordingly, the question is whether the agreement at issue merely measured Steinhouse's salary with reference to a yearly rate, thereby creating nothing more than an employment at will that was

freely terminable ( <u>Martin v. New York Life Ins. Co.</u>, supra )".  <u>TSR Consulting Services, Inc. v. Steinhouse</u>, 699 N.Y.S.2d 375, 376 (1st Dep't 1999).

The January 27, 2005 e-mail between Plaintiff and Steve Levkoff does not specify a fixed duration.  In the e-mail Levkoff discusses Pauza's title, duties, salary terms, expenses allowed, healthcare benefits, and vacation days. (Cert. of Bertrand B. Pogrebin, Esq., Ex. B.)  The e-mail is silent as to any fixed term of employment.

Plaintiff raises no genuine issues of material fact as to whether the January 27, 2005 e-mail is the only *written* outline of Standard's employment terms with Plaintiff.  There certainly is no mention of any other writing.  Plaintiff claims that the January 27, 2005 email is not the complete agreement, but that there are additional terms that Plaintiff and Defendant agreed to orally. (Plaintiff's R. 56.1 Statement, Response to Defendants' Statement of Material Facts, at ¶ 12.) Under New York law, such agreements are not enforceable.  "It is only where a plaintiff can establish the existence of an express written agreement limiting the employer's right of termination, that the principles governing employment at will are inapplicable." <u>See</u> <u>Feeney v. Marine Midland Banks, Inc.</u>, 579 N.Y.S.2d 670, 672 (1st Dep't 1992);  <u>See</u> <u>also</u>  <u>Lobosco v. New York Telephone Company/NYNEX,</u> 96 N.Y.2d 312 (N.Y. 2001) ("New York does, however, recognize an action for breach of contract when plaintiff can show that the employer made its employee aware of an express written policy limiting the right of discharge and the employee detrimentally relied on that policy in accepting employment.")

Plaintiff submits to this Court a handwritten facsimile by Plaintiff, written to Steve Levkoff, dated December 23, 2004; however, Plaintiff never argues that the fax is evidence of a contract.  It appears to evidence contract negotiations between Plaintiff and Defendant, nothing

8

more. (Supplemental Cert. of Thomas C. Jardim, Ex. B.)  A close examination reveals the document is merely proposed terms by the Plaintiff.  This document does not remotely comply with the requirement under New York law that Plaintiff establish the existence of an "express written agreement limiting the employer's right of termination."  Feeney, 579 N.Y.S.2d at 672.

Since Plaintiff does not dispute that there is no written agreement specifying a fixed term of employment, this Court finds that Plaintiff was an at-will employee.  Defendants' motion for summary judgment is granted as to Count I of Plaintiff's Complaint.

### B.  Plaintiff's Breach of the Duty of Good Faith and Fair Dealing Claim

In Count II of the Complaint, Plaintiff alleges that Defendant breached a covenant of good faith and fair dealing.

Under New York law, "implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance." Dalton v. Education Testing Service, 87 N.Y.2d 384, 389 (N.Y. 1995).  However, there can be no breach of the duty of good faith and fair dealing when there is no "valid and binding contract from which such a duty would arise."  American-European Art Assocs., Inc. v. Trend Galleries, Inc., 641 N.Y.S.2d 835, 836 (1st Dep't 1996) (dismissing cause of action for breach of the duty of good faith and fair dealing after finding that no contract existed).

Since Plaintiff failed to establish the existence of an employment contract based on the January 27, 2005 e-mail, there can be no finding by this Court that Defendant breached a covenant of a good faith and fair dealing.  Summary judgment is granted as to Count II of Plaintiff's Complaint.

### C.  Plaintiff's Conversion Claim

In Count III of Plaintiff's Complaint, he alleges that Defendants have committed conversion by keeping Plaintiff's severance benefits.

Under New York law, "the tort of conversion is established when one who owns and has the right to possession of personal property proves that the property is in the unauthorized possession of another who has acted to exclude the rights of the owner."; <u>see</u> <u>Shmueli v. Corcoran Group</u>, 802 N.Y.S.2d 871, 874 (N.Y. Sup. Ct. 2005); <u>see also</u> <u>Republic of Haiti v. Duvalier</u>, 626 N.Y.S.2d 472, 475 (1st Dep't 1995) ("Where the property is money, it must be specifically identifiable and be subject to an obligation to be returned or to be otherwise treated in particular manner.").

Plaintiff's breach of contract claim has failed.  Hence, Plaintiff has not established a legal right to the severance pay that he claims he is allegedly owed by Defendants.  There is no mention of severance pay in any writing.  No genuine issue as to a material fact is raised regarding Plaintiff's right to severance pay sufficient to implicate a conversion claim.  Defendants' motion for summary judgment is granted as to Count III of Plaintiff's Complaint.

### D.  Plaintiff's Unjust Enrichment Claim

In Count IV of Plaintiff's Complaint, Plaintiff alleges that Defendants were "unjustly enriched by the retention of severance payments that were fairly due to Plaintiff." (Compl., Count IV, at ¶ 2.)

"To establish unjust enrichment under New York law, plaintiff: must establish not only that there was enrichment, but that the enrichment was at the plaintiff's expense, and that the

circumstances dictate that, in equity and good conscience, the defendant should be required to turn over its money to the plaintiff." United States v. Nagelberg, 772 F. Supp. 120, 122 (E.D.N.Y. 1991). "The essence of unjust enrichment is that one party has received money or a benefit at the expense of another which, in good conscience, ought to be returned." Carriafielio-Diehl & Associates, Inc. v. D & M Elec. Contracting, Inc., 784 N.Y.S.2d 617, 618 (2d Dep't 2004).

Plaintiff is unable to demonstrate that Defendants benefitted at his expense because Defendants did not have any obligation to pay Plaintiff severance pay. Defendants' motion for summary judgment as to Count IV of the Complaint is granted.

### E. Plaintiff's Claim for Violation of New York Labor Law

In Count V of the Complaint, Plaintiff claims that Defendants have violated provisions of the New York Labor Law § 190, et seq., by failing to pay Plaintiff his proper wages (severance pay).[3] Although not enumerated in Plaintiff's Complaint, this Court deduces that Plaintiff's claim is based on § 193. As such, Plaintiff's claim is fatally flawed. Section 193 addresses an

---

[3] Plaintiff fails to identify a specific provision of the New York Labor Law upon which his claim is based. While such imprecision could prove fatal in some circumstance, this Court upon review of the New York Labor Law and related case law presumes that Plaintiff's claim is based on § 193 of the New York Labor Law. See Ireton-Hewitt v. Champion Home Builders Co., 501 F. Supp. 2d 341, 352 (N.D.N.Y. 2007).

Section 193 of the New York Labor Law provides:

"1. No employer shall make any deduction from the wages of an employee, except deductions which: a. are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency; or
b. are expressly authorized in writing by the employee and are for the benefit of the employee ...." See McKinney's Labor Law § 193 (2002).

employer's failure to pay wages by making unauthorized deductions.  This Court has determined that no inequity exists here because no money is owed to Plaintiff; hence, no unauthorized deductions occurred.  There is no basis to allow Plaintiff to pursue his theory of recovery.

Since Plaintiff was not entitled to receive severance pay because there was no employment contract providing such terms, Plaintiff's claim that Defendants failed to pay him his proper wages must also fail.

Defendants' motion for summary judgment as to Count V of the Complaint is granted.


## IV. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment shall be granted.


 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

Date: December 30, 2008